1 | TRACY L. WILKISON
Acting United States Attorney
2 | SCOTT M. GARRINGER
Assistant United States Attorney
3 | Chief, Criminal Division
BRIAN R. FAERSTEIN (Cal. Bar No. 274850)
4 | Assistant United States Attorney
Environmental and Community Safety Crimes Section
5 | PATRICK CASTAÑEDA (Cal. Bar No. 319431)
Assistant United States Attorney
6 | International Narcotics, Money Laundering, and Racketeering Section
7 |   1300/1400 United States Courthouse
   312 North Spring Street
8 |   Los Angeles, California 90012
   Telephone: (213) 894-2400
9 |   Facsimile: (213) 894-0141
   E-mail:   brian.faerstein@usdoj.gov
10 |            patrick.castaneda@usdoj.gov

11 | Attorneys for Plaintiff
UNITED STATES OF AMERICA

12 |              UNITED STATES DISTRICT COURT

13 |          FOR THE CENTRAL DISTRICT OF CALIFORNIA

14 | UNITED STATES OF AMERICA,        No. CR 19-00471-GW

15 |          Plaintiff,             GOVERNMENT'S SENTENCING POSITION AS
                                 TO DEFENDANT TANYA GARCIA; EXHIBIT
16 |          v.
                                 Sentencing Date: October 14, 2021
17 | TANYA GARCIA,                   Sentencing Time: 11:00 a.m.
                                 Location:    Courtroom of the Hon.
18 |          Defendant.                       George H. Wu

19 |                                 **(REDACTED FOR PUBLIC FILING)**

20 |

21 |      Plaintiff United States of America, by and through its counsel

22 | of record, the Acting United States Attorney for the Central District

23 | of California and Assistant United States Attorneys Brian R.

24 | Faerstein and Patrick Castañeda, hereby files its sentencing position

25 | regarding defendant TANYA GARCIA.

26 |      The government's sentencing position is based upon the attached

27 | memorandum of points and authorities and accompanying exhibit, the

28 | files and records in this case, the second revised presentence

investigation report, and any other evidence or argument that the Court may wish to consider at the time of sentencing.

The government reserves the right to file any supplemental sentencing position(s) that may be necessary.

Dated: October 7, 2021          Respectfully submitted,

                                TRACY L. WILKISON
                                Acting United States Attorney

                                SCOTT M. GARRINGER
                                Assistant United States Attorney
                                Chief, Criminal Division


                                    /s/
                                _____
                                BRIAN R. FAERSTEIN
                                PATRICK CASTAÑEDA
                                Assistant United States Attorneys

                                Attorneys for Plaintiff
                                UNITED STATES OF AMERICA

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................i

TABLE OF AUTHORITIES...............................................ii

MEMORANDUM OF POINTS AND AUTHORITIES...............................1

I.   INTRODUCTION.................................................1

II.  RELEVANT PROCEDURAL HISTORY..................................2

III. DEFENDANT'S OFFENSE CONDUCT.................................3

IV.  ADVISORY SENTENCING GUIDELINES CALCULATION..................6

V.   SECTION 3553(a) FACTORS.....................................7

VI.  GOVERNMENT'S SENTENCING RECOMMENDATION......................8

     A.   Term of Custody........................................8

          1.   Nature and Circumstances of the Offense and
               History and Characteristics of the Defendant (18
               U.S.C. § 3553(a)(1))..............................8

          2.   Seriousness of the Offense, Respect for the Law,
               and Just Punishment (18 U.S.C. § 3553(a)(2)(A)).....11

          3.   Affording Adequate Deterrence and Protecting the
               Public from Further Crimes of the Defendant (18
               U.S.C. § 3553(a)(2)(B) and (C))...................12

     B.   Supervised Release.....................................14

     C.   Restitution, Fine, and Mandatory Special Assessment......15

VII. CONCLUSION.................................................19

**TABLE OF AUTHORITIES**

**CASES**

Gall v. United States, 552 U.S. 38 (2007)...........................7

Molina-Martinez v. United States, 136 S.Ct. 1338 (2016).............7

United States v. Carty, 520 F.3d 984 (9th Cir. 2008)................7

United States v. Orlando, 553 F.3d 1235 (9th Cir. 2009)........16, 18

United States v. Rita, 551 U.S. 338 (2007)..........................7

United States v. Vargem, 747 F.3d 724 (9th Cir. 2014)..........17, 18

**STATUTES**

18 U.S.C. § 1028A(a)(1)..............................................2

18 U.S.C. § 1343.....................................................2

18 U.S.C. § 3553(a)............................................passim

18 U.S.C. § 3572(a)..........................................3, 17, 18

**OTHER AUTHORITIES**

U.S.S.G. § 2B1.1(a)(1)...............................................6

U.S.S.G. § 2B1.1(b)(1)(F)............................................6

U.S.S.G. § 2B1.1(b)(2)(A)(i).........................................6

U.S.S.G. § 3A1.1(b)(1), (2).........................................6

U.S.S.G. § 3B1.3.....................................................6

U.S.S.G. § 3E1.1(a), (b).............................................6

U.S.S.G. § 5D1.3(b).................................................15

U.S.S.G. § 5E1.2(c)(3)..............................................16

U.S.S.G. § 5E1.2(d)............................................17, 18

U.S.S.G. § 5E1.2, App. Note 3......................................18

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Defendant Tanya Garcia preyed on and stole from some of the most vulnerable members of our society, repeatedly and without any remorse.  Over a period of no less than four years, at least 144 identifiable immigration law firm clients – and likely many more - placed their trust in defendant as a paralegal to submit immigration-related applications to government agencies on their behalf.  The applications were vital, in large part, to permit the victim clients or their loved ones, or both, to remain in this country.  Defendant lied to these clients, telling them she would submit money orders and checks they gave her as application filing fees required for processing their applications.  Instead, defendant stole the money and used it for her own personal benefit.

Defendant continued doing so even after being confronted by one of her employers for embezzling clients' money.  Rather than change course and make things right, defendant proceeded to perpetrate her fraud at two additional immigration law firms as well as on an apparent freelance basis.  Defendant became even more brazen, in many cases crossing out "Department of Homeland Security" from the payee line of money orders and writing in her own name.  In continuing her scheme, defendant exploited, stole from, and put at risk scores of additional vulnerable victim clients seeking to navigate the United States immigration system.

Defendant's protracted and egregious fraudulent conduct threatened not only the livelihood and security of countless victims but also the immigrant community's trust and faith more broadly in the legal and immigration systems.  For the reasons discussed below,

1 defendant's conduct warrants a custodial sentence at the high end of

2 the advisory Guidelines range, or 51 months in prison, to achieve the

3 goals of sentencing in this case.

## II. RELEVANT PROCEDURAL HISTORY

5 On August 16, 2019, a grand jury returned an indictment against

6 defendant charging her with six counts of wire fraud, in violation of

7 18 U.S.C. § 1343, and one count of aggravated identity theft, in

8 violation of 18 U.S.C. § 1028A(a)(1).  (Dkt. 1.)  On November 19,

9 2020, defendant pleaded guilty pursuant to a plea agreement to one

10 count of wire fraud.  (Dkt. 46, 50.)  Sentencing was scheduled for

11 February 25, 2021.  (Dkt. 50.)  After several stipulated continuances

12 and two defense ex parte applications to continue, the Court

13 ultimately continued sentencing to October 14, 2021.[1]  (Dkt. 68.)

14 On August 4, 2021, the United States Probation and Pretrial

15 Services Office (the "USPO") filed a second revised Presentence

16 Investigation Report (the "PSR"), along with a recommendation letter,

17 in which it calculated a total offense level of 22 and a Criminal

18 History Category I, resulting in an advisory Guidelines range of 41

19 to 51 months in prison.  (Dkt. 64, 65, 66.)  The USPO recommends

20 defendant be sentenced to a term of 41 months in prison, with two

21 years of supervised release to follow, no fine, a $100 mandatory

---

[1] The parties initially stipulated to a brief continuance of sentencing, as additional time was needed to firm up the amount of restitution for identifiable victims, and the Court continued sentencing to March 25, 2021.  (Dkt. 53, 54.)  The parties stipulated to continue sentencing two additional times, and defendant moved ex parte to continue sentencing one additional time, as defendant represented that she needed additional time to obtain and review certain medical records requested by the USPO and pertinent to issues at sentencing.  (Dkt. 55, 57, 62.)  Most recently, defendant moved ex parte a second time to continue sentencing due to the Court's limitation on in-person hearings in August 2021 due to the ongoing COVID-19 pandemic.  (Dkt. 67.)

2

special assessment, and $138,647.00 in restitution.  (Dkt. 64.)

Consistent with the parties' plea agreement, the government agrees with the USPO's offense level calculation under the Guidelines and concurs with its criminal history calculation as well.[2]  However, for the reasons set forth herein, the government disagrees with the USPO's custodial recommendation at the low end of the advisory Guidelines range and instead recommends a high-end custodial sentence of 51 months in prison.  The government also disagrees with the USPO's recommendation of waiving the fine in this case and believes a $60,430 fine is appropriate under 18 U.S.C. §§ 3553(a) and 3752(a), and U.S.S.G. § 5E1.2.  The government further recommends a three-year, instead of a two-year, term of supervised release.  The government agrees with the USPO's recommendations as to the terms of supervised release and the mandatory special assessment.

**III. DEFENDANT'S OFFENSE CONDUCT**

As described in the second revised PSR and the factual basis in the parties' plea agreement, defendant worked as a paralegal at several immigration law firms that assisted clients with a variety of immigration-related proceedings.  (PSR ¶ 12; <u>see also</u> <u>generally</u> Dkt. 46 (Plea Agreement, Attachment A – Factual Basis).)  These clients retained the immigration law firms to help them navigate legal procedures relating to delicate matters such as applying for asylum, relief from deportation, United States residency and citizenship, and work permits.  (PSR ¶ 12.)  Entrusted by many of these clients to

---

[2] At the time of the USPO's filing of its initial PSR, the government informed the USPO by email, copying defense counsel, that it did not have any substantive objections to the PSR other than the correction of one date, which the USPO has since corrected.

assist in this process, defendant used her paralegal position to steal money from these vulnerable victims.

Among other things, defendant defrauded clients into handing over money orders or personal checks that she represented would be used to pay application filing fees required by government agencies, such as U.S. Citizenship and Immigration Services ("USCIS"). (Id. ¶ 15.) Defendant generally instructed the victim-clients to leave the "pay to" line of the money orders or checks blank or otherwise informed them that she would complete the money orders or checks for them. (Id. ¶ 16.) In many cases, the applicable filing fees were actually due and owed to the relevant government agency; in other cases, defendant fabricated the need to pay filing fees and deceived victim-clients into believing that other unnecessary applications and filing fees were necessary to be filed. (Id. ¶ 17.)

Instead of directing the money orders or checks to the appropriate government agency, defendant wrote her own name in the "pay to" line and deposited the payments into her personal bank accounts. (Id. ¶¶ 19-20.) Defendant even went so far in some cases to cross out "U.S. Department of Homeland Security" from the "pay to" line of money orders she obtained from clients, write in her own name, and deposit the money orders in her own bank account. (Id. ¶ 19.) And in other cases, defendant added other marks on the face of money orders, including in the purchaser signature line, purportedly reflecting the authorization of the victim-client who had purchased the money order. (Id.)

Defendant lied to and cheated at least 144 separate identifiable victims during the relevant period, and many others who cannot be

4

1   identified, embezzling nearly $200,000 that can be accounted for in

2   her bank accounts.  (Id. ¶ 23.)  Defendant used the hundreds of

3   thousands of dollars she stole from victim-clients to pay her own

4   personal expenses, including credit card payments, clothing, and

5   food.  (Id. ¶¶ 18, 20.)  Among other things, as reflected in an over

6   16,000-page feed from defendant's Instagram account produced in

7   discovery and provided to the USPO, defendant traveled frequently

8   during the relevant time period of the indictment to destinations

9   such as Madrid, Barcelona, and Ibiza, Spain; Punta Cana, Dominican

10  Republic; Mexico; Miami; and Las Vegas.[3]

11      Defendant's embezzlement of victim-client monies intended for

12  application filing fees had a predictable and significant impact on

13  the victim-clients and their immigration-related applications.  (See,

14  e.g., Victim Impact Statement ("VIS") from L.G.U; VIS from S.M.[4])

15  Many of defendant's victim-clients were seeking asylum, relief from

16  deportation, or other legal status.  (Id. ¶ 12.)  And many had

17  limited English communication skills and did not know how to navigate

18  the United States legal system to obtain immigration benefits.  (Id.

19  ¶ 14.)  When victim-clients realized that their applications were not

20  being processed by USCIS or their cases were going nowhere, defendant

21  lied about the delays or lack of response from the government agency

22  and often prevented clients from speaking to a licensed attorney at

23  the law firms at which she worked.  (Id. ¶ 21.)  Defendant's fraud

24  also had a significant impact on the victim-attorneys who employed

25

26      [3] The Instagram feed is too voluminous to attach to this filing
    and contains a significant amount of personally identifiable
27  information, but it can be made available to the Court if requested.

        [4] The government provided these victim impact statements to the
28  USPO for submission to the Court.

her, undermining clients' trust in their businesses and significantly impacting their operations. (See, e.g., VIS from P.F.V.)

## IV.   ADVISORY SENTENCING GUIDELINES CALCULATION

Applying the November 1, 2018 Guidelines, and taking into account relevant conduct, the USPO calculated defendant's total offense level as 22 based on the following calculations:

| | | |
|---|---|---|
| **Base Offense Level:** | 7 | U.S.S.G. § 2B1.1(a)(1) |
| **Specific Offense Characteristics:** | | |
| • Loss ($150,000 > $250,000) | +10 | U.S.S.G. § 2B1.1(b)(1)(F) |
| • More than 10 victims | +2 | U.S.S.G. § 2B1.1(b)(2)(A)(i) |
| **Adjustments:** | | |
| • Large # vulnerable victims | +4 | U.S.S.G. § 3A1.1(b)(1), (2) |
| • Abuse of trust | +2 | U.S.S.G. § 3B1.3 |
| • Acceptance of responsibility | -3 | U.S.S.G. § 3E1.1(a), (b) |
| **Total Offense Level:** | 22 | |

(See PSR ¶¶ 32-43.)  In addition, the USPO determined that defendant has zero criminal history points, resulting in a Criminal History Category of I. (See id. ¶¶ 48-49.)

With a total offense level of 22 and a Criminal History Category I, defendant's advisory Guidelines range is 41 to 51 months' imprisonment. The government recommends a sentence at the high end of this advisory Guidelines range, or 51 months in prison, along with three years of supervised release to follow with the special conditions recommended by the USPO, restitution in the amount of $138,647, a fine of $60,430, and the $100 mandatory special assessment, for the reasons described below.

1   **V.    SECTION 3553(a) FACTORS**

2        The Court should impose a sentence sufficient, but not greater

3   than necessary, to reflect the purposes of sentencing that Congress

4   identified in 18 U.S.C. § 3553(a).  <u>United States v. Carty</u>, 520 F.3d

5   984, 991 (9th Cir. 2008).  The advisory Guidelines range provides the

6   "starting point and . . . initial benchmark" for this Court's

7   consideration of an appropriate sentence.  <u>Molina-Martinez v. United</u>

8   <u>States</u>, 136 S.Ct. 1338, 1345 (2016) (quoting <u>Gall v. United States</u>,

9   552 U.S. 38, 49 (2007)).  Although the Guidelines are not binding,

10  they "reflect a rough approximation of sentences that might achieve

11  section 3553(a)'s objectives."  <u>United States v. Rita</u>, 551 U.S. 338,

12  350 (2007).

13       Under 18 U.S.C. § 3553(a), in arriving at the appropriate

14  sentence for defendant, the Court should consider, among other

15  factors, the nature and circumstances of the offense and the history

16  and characteristics of the defendant, § 3553(a)(1); the need for the

17  sentence imposed to reflect the seriousness of the offense, to

18  promote respect for the law, and to provide just punishment for the

19  offense, § 3553(a)(2)(A); the need for the sentence imposed to afford

20  adequate deterrence to criminal conduct, § 3553(a)(2)(B); the need

21  for the sentence imposed to protect the public from further crimes of

22  the defendant, § 3553(a)(2)(C); the need to avoid unwarranted

23  sentence disparities among defendants with similar records who have

24  been found guilty of similar conduct, § 3553(a)(6); and the need to

25  provide restitution to any victims of the offense, § 3553(a)(7).

26

27

28

1  **VI.   GOVERNMENT'S SENTENCING RECOMMENDATION**

2      **A.   Term of Custody**

3          In light of the relevant sentencing factors under 18 U.S.C.

4  § 3553(a), a high-end sentence of 51 months in prison is sufficient,

5  but not greater than necessary, to achieve the goals of sentencing in

6  this case.

7          1.   <u>Nature and Circumstances of the Offense and History</u>

        <u>and Characteristics of the Defendant (18 U.S.C.</u>

8          <u>§ 3553(a)(1))</u>

9      Defendant's fraudulent scheme was as callous as it was brazen,

10 targeting one of the most vulnerable groups in our society.  She used

11 her position as a paralegal to prey on immigrants with limited

12 language skills and little understanding of the United States

13 immigration system.  (PSR ¶ 14.)  Defendant did so having herself

14 emigrated to the United States at a young age without the ability to

15 speak English.  (<u>Id.</u> ¶ 56.)  She understood through her own

16 experience the challenges her victims faced, and what lay at stake in

17 the success or failure of their immigration applications.

18     Defendant's criminal conduct was not a momentary lapse in

19 judgment or an aberration.  Rather, she perpetrated her fraud for at

20 least four years, from one law firm to the next, victimizing at least

21 144 separate, identifiable victims, and likely many more that could

22 not be identified due to the lack of identifying information in

23 numerous other money orders found in defendant's bank accounts.[5]

24

25     [5] At the time the government submitted a draft victim list to

26 the USPO (which was also produced to the defense) for purposes of the
   USPO's presentence investigation in December 2020, the government was
27 then able to identify at least 144 unique victims and/or their family
   members from the information obtained from defendant's bank accounts.
28 The government continued working on seeking to identify additional

                              *(footnote cont'd on next page)*

8

In some cases, defendant even duped victims to trust her with their immigration-related applications on an apparent freelance basis.  For example, one victim described that defendant "claimed to be a paralegal and claimed she held her bar license," and the victim sought services directly from defendant.  (VIS from S.M.)  As illustrated in the attached text message exchange between defendant and S.M. that the government produced in discovery (and which S.M. references in her victim impact statement), defendant victimized S.M. for a period of nearly two years, evading S.M.'s inquiries and lulling her into a false sense of security about her immigration applications.  (See Exhibit 1 attached hereto.)  Defendant ignored S.M.'s inquiries for extended periods of time.  (Id.)  Defendant stopped responding to S.M.'s text message inquiries altogether in February and March 2018, and S.M. was forced to file a small claims action against defendant one year later, prior to the charges in this case.[6]  (See id. at 9-10.)  There were other victims of defendants'

---

victims following its initial submission to the USPO.  (See Dkt. 53.) The restitution list submitted as part of the USPO's second revised PSR and sentencing recommendation, however, includes 130 unique identified individual victims (accounting for several entries that include family members as well).  The restitution list does not include all identifiable victims, as a number of identifiable victims' losses were covered by the third law firm (V.L.F.) at which defendant worked.  And, as the government informed the USPO and the defense and explains further below, numerous other money orders that make up the approximately $200,000 loss amount in this case were unable to be traced to identifiable victims due to the nature of defendant's fraud.

[6]

*age)*

apparent freelance fraud as well; the restitution information the
government provided to the USPO categorized the identifiable victims
of defendant's fraudulent scheme by their apparent affiliation with
the three law firms at which defendant worked during the relevant
period of the scheme and included a fourth category for unaffiliated
victims such as S.M.

In all cases, defendant lied to and took advantage of these
vulnerable victims, knowing all too well the potential consequences
of stealing the monies that were necessary for the processing of
their immigration-related applications.  As one of her former
employers described it, defendant "used her lived experiences as an
immigrant to exploit other immigrants.  She preyed on the most
vulnerable to spend lavishly on herself – vacations, a luxury car,
and indulgent personal grooming."  (VIS from P.F.V.)  The brazenness
of defendant's fraud is best illustrated by the numerous money orders
found in her bank account where she crossed out the "Department of
Homeland Security" as the payee and inserted her own name.  (PSR
¶ 19.)  Defendant knew exactly what the money was for, and what
impact her theft would have on the victim-clients.  Defendant

directly compromised these victims' immigration status and personal security, all for her own financial gain.

        2.   <u>Seriousness of the Offense, Respect for the Law, and Just Punishment (18 U.S.C. § 3553(a)(2)(A))</u>

A significant custodial sentence also is needed in this case to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.  Defendant's fraud targeted and undermined the credibility of the practice of law, particularly among immigrant victim-clients especially susceptible to abuse.  While the advisory Guidelines calculation accounts for the abuse of trust and targeting of large numbers of vulnerable victims endemic to defendant's conduct, the serial and extended nature of her exploitation of these victims warrants a sentence at the high end of the resulting range.  So too does the significant damage defendant's scheme exacted on the legal profession.  The unique circumstances of this case call for a high-end sentence, here 51 months' imprisonment, just three months more than the 48 months at a minimum that defendant perpetrated her scheme and stole from victims.  Such a sentence will promote respect for the law by both holding defendant fully accountable for her protracted, egregious conduct and elevating the need to restore and protect the public's trust in legal services and practitioners.

Moreover, such punishment is just in light of the scores of lives defendant harmed and placed in legal jeopardy through her fraud.  The aggregate loss amount of nearly $200,000 that the government was able to quantify in this case does not adequately capture the fear and anxiety defendant's scheme caused countless

11

victims to endure.  Each immigration application fee defendant stole from each victim inflicted an individualized harm, with lasting impact on victims' sense of security and trust in the immigration system.

For example, one victim explained, "[s]ocially it also impacted me and it still impacts me because ████████████████████ ███████████████████████████████████████████████████████ ████████████████████████████"  (VIS from L.G.U.)  Another victim described the impact of defendant's fraud being "heartbreaking for [her] family," as defendant "has taken advantage of working-class families who are trying to make ends meet."  (VIS from S.M.)  And one of her former employers explained he "operate[d] [his] business with a high degree of anxiety about handling financial matters because [defendant] destroyed my ability to trust."  (VIS from P.F.V.)

Defendant's callous and pernicious conduct calls for a sentence reflective of the financial and emotional harm she inflicted on her victims and the trust and credibility she undermined in the legal profession.  A high-end sentence of 51 months in prison is both just and commensurate with the seriousness of the crime.

3.  <u>Affording Adequate Deterrence and Protecting the Public from Further Crimes of the Defendant (18 U.S.C. § 3553(a)(2)(B) and (C))</u>

During the course of perpetrating her fraudulent scheme, defendant showed herself to be undeterred from victimizing additional clients even after being caught in the act of stealing from victims. Defendant's recidivist and extensive fraudulent conduct further requires a high-end sentence to afford adequate deterrence – both

general and specific – to criminal conduct and to protect the public from further crimes of the defendant.

Defendant's scheme lasted at least from 2014 to 2018, spanning her work for at least three separate law firms and apparent unlicensed representation of other unaffiliated clients. (PSR ¶¶ 12, 14, 85-87.) In June 2016, defendant's then-employer learned that defendant had inserted her name as the payee on a client's money order, confronting defendant with this revelation and uncovering numerous other clients of the firm that were similarly defrauded. (VIS from P.F.V.) But rather than take this opportunity to make things right and change course, defendant found at least two additional immigration firms at which to work and defraud numerous additional vulnerable victims. (PSR ¶¶ 14, 85-86.) Defendant also continued to perpetrate her fraud upon other victims outside of the law firms, as reflected, for example, in her text messages with victim S.M. from 2016 through 2018. (See Exhibit 1.)

Even today, defendant appears to obfuscate when asked about details of her fraudulent scheme. For instance, during her interview with the USPO, defendant reportedly claimed that she left her first employer's firm due to "stress" when in fact she abandoned the job upon being confronted with the discovery of her fraud. (Id. ¶ 87.) A significant custodial sentence is necessary to deter defendant from engaging in similar conduct in the future and to protect the public from additional crimes of defendant.

In addition, similar to the need to promote respect for the law, a high-end sentence in a case such as this will signal to other potential wrongdoers in the legal industry that there are significant

consequences for taking advantage of vulnerable clients.  Meaningful

deterrence is particularly necessary in the immigration law field,

where the balance of information tilts heavily toward legal

practitioners and staff and away from clients navigating the complex

United States immigration system.  Opportunities for abuse are rife,

and general deterrence is necessary to protect some of the most

vulnerable in our society.  A sentence at the high end of the

Guidelines in a case such as this will send a resounding message to

those preying on these potential victim clients that such wrongdoing

will be met by the full force of the law.

*          *          *

With these factors in mind, the government respectfully submits

that a high-end custodial sentence of 51 months in prison is

sufficient, but not greater than necessary, to achieve the goals of

sentencing in this case.

B.    **Supervised Release**

The government believes a three-year period of supervised

release, and not the two years recommended by the USPO, should follow

a term of imprisonment in this case.  The full three-year period of

supervision is necessary to monitor defendant under the terms of

supervision recommended by the USPO and thereby protect the public

from further crimes of defendant.  18 U.S.C. § 3553(a)(2)(C).

As described above, defendant engaged in her fraudulent conduct

undeterred for at least a four-year period of time.  Even when

confronted with her misconduct, defendant found new opportunities and

victims to perpetrate her scheme.  The government is especially

troubled that defendant appears to have found and victimized clients

14

outside of her work for traditional law firms and under the auspices of having her own bar license, evincing wherewithal and a lack of respect for the law.  The government believes that, under these circumstances, defendant should be monitored for the full three-year term of supervised release as she reintegrates into society after a term of custody.

The government concurs with the USPO's recommended special conditions of supervised release set forth in its sentencing recommendation.  (Dkt. 64.)  These conditions are largely aimed at protecting the public from further financial crimes by defendant and preventing her from holding positions of trust while under supervision, which are reasonably related to the sentencing factors described more fully above.  U.S.S.G. § 5D1.3(b).

### C.   Restitution, Fine, and Mandatory Special Assessment

The government concurs with the USPO's recommendation of $138,647 in restitution payable to the victims the government was able to identify during the course of its investigation.  The list of victims and respective compensable amounts due is appended to the second revised PSR.

As previously noted, there were a significant number of money orders found in defendant's bank accounts that did not contain any identifiable victim information or other information that would allow the government to connect the money orders to identifiable victims despite the government's efforts to do so.  The existence of these largely blank money orders was consistent with defendant informing certain clients that she would fill out the purchased money orders when they informed her they did not know how to complete them.  (PSR

¶ 16.)  As these money orders were in amounts similar to the USCIS application filing fees or shared other similarities to the application fee money orders that were connected to identifiable victims, they were counted as part of the overall approximate loss figure of $199,077 agreed upon in the plea agreement.  (Dkt. 46, Att. A, ¶ 13.)

Accordingly, the government believes a fine is appropriate in this case as an additional punitive measure, particularly to disgorge defendant of the ill-gotten monies she stole as part of her fraudulent scheme.[7]  The government recommends a fine of $60,430, representing the difference between the approximate total loss amount and the aggregate amount of compensable restitution to identifiable victims in this case.  Such a fine would fall squarely within the range of $15,000 to $150,000 for a total offense level of 22 in the fine table in the Sentencing Guidelines.  See U.S.S.G. § 5E1.2(c)(3).

The Guidelines provide that "[t]he Court shall impose a fine in all cases, except where the defendant establishes that [s]he is unable to pay and is not likely to become able to pay any fine."  U.S.S.G. § 5E1.2(a).  "The defendant bears the burden of proving [s]he is unable to pay the fine."  United States v. Orlando, 553 F.3d 1235, 1240 (9th Cir. 2009); see also United States v. Vargem, 747

---

[7] If a fine is ordered, "any money paid by the defendant shall first be applied to satisfy the order of restitution."  U.S.S.G. § 5E1.1(c); see also 18 U.S.C. § 3572(b) ("[T]he court shall impose a fine or other monetary penalty only to the extent that such fine or penalty will not impair the ability of the defendant to make restitution.").  Moreover, should the Court order a fine, the Court may not also impose a condition of community service as an alternative sentence to be carried out if the fine is not paid (to the extent the USPO recommended that condition in lieu of a fine in this case).  See 18 U.S.C. § 3572(e); see also United States v. Robinson, 20 F.3d 1030, 1035 (9th Cir. 1994).

F.3d 724, 732 (9th Cir. 2014) ("burden is on [defendant] to show inability to pay by a preponderance of evidence").  In determining the appropriateness of the imposition of a fine and its amount, the Court "must consult the Guidelines' recommendation, the § 3553(a) factors, and the 18 U.S.C. § 3572(a) factors."  Id.  "The amount of the fine should always be sufficient to ensure that the fine, taken together with other sanctions imposed, is punitive."  U.S.S.G. § 5E1.2(d).

As described more fully in section VI.A above, an analysis of the section 3553(a) factors confirms the scope and seriousness of defendant's fraud and the lasting impact it had on large numbers of especially vulnerable victims.  Just punishment, including financial in addition to custodial consequences, is necessary in this case.

The factors listed in 18 U.S.C. § 3572(a) further support the imposition of a fine.  Among other things, the statutory factors include consideration of "any pecuniary loss inflicted upon others as a result of the offense" and "the need to deprive the defendant of illegally obtained gains from the offense."  18 U.S.C. § 3572(a)(3), (5).  Here, due to defendant's theft of numerous money orders with no trace of victim-clients' identification, defendant inflicted pecuniary loss on significant numbers of victims who cannot be identified for restitution purposes.  Defendant should be deprived of the illegally obtained gains from those money orders.

As for the "the defendant's income, earning capacity, and financial resources," and "the burden that the fine will impose upon the defendant," 18 U.S.C. § 3572(a)(1)-(2), the PSR reflects defendant has significant assets and a total net worth of over

17

$512,000.  (See PSR 91.)  While a significant portion of those assets may not be currently liquid, the government is troubled by significant expenses defendant has incurred since her arrest and pretrial release in this case.  For example, according to the PSR, defendant purchased and/or financed home solar panels and a Tesla solar battery valued at over $60,000 in the aggregate in May 2020, with full knowledge of the losses she had caused to victims in this case.  (See id. ¶ 91, 95.)  It is also significant that defendant was able to post a bail bond secured by her home and ultimately retain counsel in this case.  See U.S.S.G. § 5E1.2, App. Note 3.  The burden is on defendant to prove she cannot pay a fine, and on the record before the Court, the government submits that that burden has not been met.  Orlando, 553 F.3d at 1240; Vargem, 747 F.3d at 732.

In addition, the Court must consider "the expected costs to the government of any imprisonment, supervised release, or probation component of the sentence."  18 U.S.C. § 3572(a)(6).  The PSR sets forth the estimated costs for incarceration at a Bureau of Prison facility and supervision by the USPO.  (PSR ¶ 115.)  Even based on the USPO's low-end recommendation of 41 months in prison and two years of supervised release, the associated costs far exceed the government's recommended fine of $60,430, which is toward the lower end of the range of fines associated with defendant's total offense level.[8]

---

[8] U.S.S.G. § 5E1.2(d) lists additional factors for the Court to consider in determining the amount of a fine, but most of these considerations are largely accounted for in 18 U.S.C. §§ 3553(a) and 3572(a).

18

Finally, the government concurs with the USPO's recommendation that defendant pay the $100 special assessment, which is mandatory in this case.

**VII. CONCLUSION**

For the reasons set forth above, the government respectfully requests that defendant be sentenced as follows: (1) 51 months' imprisonment; (2) a three-year period of supervised release to follow; (3) restitution in the amount of $138,647 to be paid to the identified victims listed in the PSR; (4) a fine of $60,430; and (5) a mandatory special assessment of $100.